## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | CASE NO. 8:10CV102 |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM AND ORDER |
| RAJNISH K. DAS and STORMY L. DEAN, | ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the Court on the Defendants' Motions to Dismiss (Filing Nos. 16, 25). The motions are supported by Briefs (Filing Nos. 17, 26) and Indexes of Evidence (Filing Nos. 18, 27). The Plaintiffs submitted their Brief in Opposition (Filing No. 35) and Index of Evidence (Filing No. 36), and Defendants each submitted Reply Briefs (Filing Nos. 47 and 50), and Indexes of Evidence in support of their respective replies (Filing Nos. 48 and 52). The parties also submitted supplemental materials after this case became ripe for decision (Filing Nos. 53, 55, 56, 57) and those have been considered. For the reasons discussed below, the motions will be denied.

### FACTUAL AND PROCEDURAL HISTORY

The following facts are based on the allegations in the Complaint (Filing No. 1), which the Court accepts as true for the purposes of the motions to dismiss.

This case was brought by the United States Securities and Exchange Commission ("SEC") against the Defendants, alleging fraud and other misconduct by two former chief financial officers ("CFOs") of infoUSA Inc. (now InfoGroup Inc.) ("Info"). Defendant Rajnish K. Das ("Das") is a New York resident and was Info's CFO from September 2003 until January 2006. Info terminated Das's employment in July 2006. Defendant Stormy L.

Dean ("Dean") is a Nebraska resident and served as Info's CFO from January 2000 to September 2003, and from January 2006 until December 2008. As CFOs, Das and Dean were responsible for Info's accounting, financial reporting, and internal controls and policies. The SEC generally claims that, during their respective tenures, the Defendants prepared and reviewed Info's Forms 10-K and proxy statements that contained material understatements and failed adequately to disclose the compensation of Vinod Gupta ("Gupta"), Info's former chief executive officer ("CEO") and former chairman of Info's board of directors. The SEC also claims the Defendants failed to disclose related-party transactions involving entities owned or controlled by Gupta.

## I.   Defendants' Responsibilities at Info

During the relevant time[1], Info was a public company and was required to file annual reports on Forms 10-K, quarterly reports on Forms 10-Q, and proxy statements.[2] The SEC claims the Defendants each had significant roles in preparing and ensuring the accuracy of Info's reports and filings with the SEC. From 2003 to 2004, Das reviewed Info's proxy statements and was a named proxy in the company's 2004 proxy statement. Das also reviewed, signed, and certified Info's Forms 10-K, which incorporated the company's proxy statements by reference. From 2003 to 2005, Das signed Info's management

---

[1] The Complaint does not specifically define the period encompassed by the "relevant time" and "relevant period." However, Paragraph 2 of the Complaint states "[f]rom at least 2003 through 2007, Gupta treated the company as a vehicle through which he could obtain money to pay for personal expenses." Because this allegation appears to be the crux of the SEC's claims, the Court assumes the "relevant period" is from 2003 through 2007.

[2] The Complaint states that during the relevant period, Info incorporated by reference certain information regarding executive compensation from its proxy statements into its Forms 10-K.

2

representation letters to Info's external auditors and completed director and officer questionnaires. Similarly, Dean reviewed Info's proxy statements during his tenure as CFO and solicited proxies from shareholders in connection with the company's 2005 proxy statement. Dean also reviewed, signed, and certified Info's Forms 10-K from 2005 to 2007, which incorporated by reference the company's proxy statements. From 2004 until at least 2006, Dean signed management representation letters to external auditors and completed director and officer questionnaires.

## II.    Undisclosed Perquisites

The Complaint first alleges that from 2003 until 2007, Gupta received approximately $9.5 million in compensation from Info in the form of undisclosed or improperly reported perquisites. Part III, Item 11, of Form 10-K requires public companies to disclose information on "Executive Compensation" as defined by Item 402 of Regulation S-K ("Item 402").[3] Item 402 requires disclosure of compensation awarded to, earned by, or paid to certain executives including the reporting entity's chief executive officer. 17 C.F.R. § 229.402(a)(2), (3). Item 402 also requires reporting entities to disclose perquisites and other personal benefits paid to executives. 17 C.F.R. § 229.402(c)(2)(ix)(A). The SEC alleges Gupta received approximately $9.5 million from Info in the form of undisclosed perquisites by receiving company funds to pay for personal expenses. The allegedly undisclosed perquisites included reimbursement for personal use of corporate jets, yachts, cars, credit cards, life insurance policies, homes, and country club memberships.

---

[3] Item 402 of Regulation S-K is found at 17 C.F.R. § 229.402.

The SEC specifically alleges that Das reviewed, approved, and directed Info to pay Gupta's reimbursement requests from September 2003 until November 2005; that Dean reviewed and directed Info to pay Gupta's similar requests from January through September 2003 and from January 2005 until December 2007; and that both Defendants approved these expense reimbursement requests by signing or affixing their initials to the requests. The Complaint states the purpose of reviewing and approving reimbursement requests was to ensure that the requests complied with Info's internal policies and controls and were valid business expenses. Info's internal policies and controls required documentation sufficient to demonstrate that an expense was a valid business expense and not employee compensation. The SEC alleges that Das and Dean approved Gupta's expense reimbursement requests despite the fact that the requests lacked sufficient documentation and explanation, and approved some reimbursement requests without any business justification. The SEC alleges that the improperly approved requests should have been treated as compensation or perquisites.

The SEC states that on several occasions, Das and Dean knew, or were reckless in not knowing, that the approved reimbursements were for Gupta's personal expenses rather than business expenses. Specifically, the SEC alleges that Das directed Info to reimburse Gupta for private jet travel and hotel accommodations for a trip to Italy; hotel charges for a personal trip to France; personal life insurance premiums; costs of purchasing and leasing vehicles; and expenses for Gupta's yacht and country club memberships. The SEC claims that Dean approved Gupta's reimbursement requests for a personal private jet trip to Las Vegas; his honeymoon in South Africa; and expenses relating to Gupta's homes, yacht, and automobiles.

The SEC alleges that Das and Dean ignored concerns expressed to them by Info employees.  The SEC claims that In December 2004 Info's corporate controller told Das and Dean that Info was reimbursing Gupta for what appeared to be personal expenses, and that such payments should be imputed to Gupta as personal income.  In June 2005, a new corporate controller told Das that a meaningful review of Gupta's credit card expenses could not be conducted without third party documentation such as credit card statements or receipts.  In the summer of 2005, the acting director of internal audit at Info raised concerns to both Das and Dean about payments to Gupta for personal expenses. In January 2006 and again in early 2007, Info's director of financial reporting asked Dean whether payments for cars or club memberships were perquisites that required disclosure on Info's proxy statements.  The Complaint alleges that neither Das nor Dean took appropriate action in response to these inquiries and continued to reimburse Gupta for his personal expenses.  The SEC alleges that Das and Dean knew, or were reckless in not knowing, that Info's Forms 10-K, related proxy statements, and books, records, and accounts from 2003 through 2007 failed to disclose certain compensation as perquisites paid to Gupta.

## III.    Related Party Transactions

The SEC claims that Info's Forms 10-K and proxy statements from 2003 through 2005 materially understated, mischaracterized, or omitted significant related-party transactions involving two companies owned by Gupta:  Annapurna Corporation ("Annapurna") and Aspen Leasing Services, LLC ("Aspen Leasing").  Form 10-K requires public companies to furnish information regarding certain relationships and related

5

transactions in accordance with Item 404 of Regulation S-K ("Item 404").[4]   Also, the Complaint states that Generally Accepted Accounting Principles ("GAAP") require disclosures concerning related-party transactions.   The  amounts paid to these entities during 2003 through 2005 allegedly were understated by approximately $5.4 million. Specifically, Info's Forms 10-K from 2003 through 2005 reflected just over four million dollars paid to Annapurna for use of an aircraft.   The Complaint alleges that these statements were materially misleading because Info's payments to Gupta's entities involved more than use of an aircraft and because several other transactions with Gupta's entities were not disclosed.   In addition to use of an aircraft, Info allegedly paid Gupta's entities for Gupta's homes, yacht, and cars, and provided rent-free office space to Gupta's entities in buildings owned by Info.

The SEC claims that Das and Dean knew Info's payments to Gupta's entities were related-party transactions, but failed to disclose the true nature of the transactions on Info's Forms 10-K and proxy statements.   For example, Das and Dean each approved payments on Annapurna's behalf directly to a jet leasing company, thereby reducing the amount of related-party payments made directly to Annapurna.   The SEC also alleges that Gupta and Das structured purchases of two jet interests and four cars from Gupta's entities in a way that concealed the transactions from investors.   In the fourth quarter of 2003, Gupta allegedly directed Info to purchase a jet interest from Annapurna for approximately $1.1 million.   To give the appearance that the purchase was from an unrelated third party, Das and Gupta structured the transaction such that Annapurna sold the jet interest to a jet

---

[4]  17 C.F.R. § 229.404.

6

leasing company and simultaneously approved Info's purchase of the interest.  In the third quarter of 2007, Info purchased a second jet interest from Annapurna for approximately $1.7 million in an identically structured transaction.  Info also purchased four cars from Aspen Leasing through a straw man in February 2005, and the SEC alleges that Das and Gupta intentionally structured the transaction this way to avoid disclosure of the related-party transaction.  The SEC states that Das and Dean knew or should have known that failing to disclose the related-party transactions rendered the Forms 10-K and proxy statements for 2003 and 2004 false or materially misleading.  Finally, Das and Dean allegedly signed management representation letters to Info's outside auditors, falsely certifying that all related-party transactions had been disclosed.

## IV.    Causes of Action

Based on the factual allegations described above, the SEC presents eight causes of action.  First, the SEC alleges a violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.  Second, the SEC claims that Das and Dean violated Section 14(a) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. § 78n(a), and Rules 14a-3 and 14a-9, 17 C.F.R. §§ 240.14a-3 and 14a-9.  Third, the SEC alleges that Das and Dean falsified Info's books, records, or accounts under Section 13(b)(5) of the Exchange Act, 15 U.S.C. § 78m(b)(5), and Rule 13b2-1, 17 C.F.R. § 240.13b2-1.  Fourth, the SEC claims that Das and Dean made false certifications that Info's filings contained no untrue or omitted statements of material fact under Rule 13a-14, 17 C.F.R. § 240.13a-14.  Fifth, the SEC alleges that Das and Dean deceived auditors or accountants in connection with audits, reviews, or examination of financial statements in violation of Rule 13b2-2, 17 C.F.R. § 240.13b2-2.  For its sixth and seventh causes of

7

action, the SEC alleges that Das and Dean aided and abetted Info in intentionally providing

false SEC filings in violation of Section 13(a) of the Exchange Act, 15 U.S.C. §§ 78m(a),

and Rules 12b-20 and 13a-1, 17 C.F.R. §§ 240.12b2-20 and 240.13a-1.  Finally, the SEC

claims that Das and Dean aided Info in intentionally providing false books and records in

violation of Section 13(b)(2) of the Exchange Act, 15 U.S.C. § 78m(b)(2).  Each of the

individual causes of action incorporates the factual allegations by reference and generally

alleges that the Defendants' actions satisfy the elements of each claim.  Das and Dean

each filed motions to dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6).

**STANDARDS OF REVIEW**

### I.      Particularity Under Rule 9(b)

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  Federal Rule of Civil Procedure 9(b), however, requires that fraud be alleged with

particularity.  The Eighth Circuit Court has described Rule 9(b)'s particularity requirement:

> Under Rule 9(b), the circumstances constituting fraud . . . shall be stated with
> particularity.  Rule 9(b)'s particularity requirement demands a higher degree
> of notice than that required for other claims, and is intended to enable the
> defendant to respond specifically and quickly to the potentially damaging
> allegations.    To satisfy the particularity requirement of Rule 9(b), the
> complaint must plead such facts as the time, place, and content of the
> defendant's false representations, as well as the details of the defendant's
> fraudulent acts, including when the acts occurred, who engaged in them, and
> what was obtained as a result.  Put another way, the complaint must identify
> the "who, what, where, when and how" of the alleged fraud.

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006)

(internal citations omitted).

8

A plaintiff must state an underlying basis for its assertions sufficient to provide indicia of reliability. *Id.* at 557 (citing *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013-14 (11th Cir. 2005)). While a plaintiff need not allege specific details of every alleged fraud, the plaintiff must provide some representative examples of the alleged misconduct. *Id.*

## II.   Failure to State a Claim Under Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation and citations omitted). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Specifically, the complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" to substantiate the necessary elements of the plaintiff's claim. *Id.* at 556.

When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

"Two working principles underlie . . . *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 1950 (citing *Twombly,* 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . .  be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

## DISCUSSION

### I.      Particularity of Misconduct Under Rule 9(b)

A.  Details of Fraudulent Behavior

To meet the requirements of Rule 9(b) in a securities case, the SEC is required to specify objectionable transactions, identify misleading statements, and specify the reasons why they are false or misleading.  *SEC v. Tiffany Indus., Inc.*, 535 F. Supp. 1160, 1167 (E.D. Mo. 1982).  The SEC's Complaint meets these requirements.  Regarding the alleged perquisites, the SEC alleges that the Defendants directed Info to pay several of Gupta's expense reimbursement requests despite the fact that the requests lacked sufficient explanation of business purpose and supporting documentation.  As examples, the Complaint describes several allegedly "personal" expenses that Das and Dean approved as business expenses.  The specific examples include the year these expenses were incurred and their amounts.  The Complaint further alleges that the Defendants failed to

take appropriate action regarding Gupta's expense reimbursement requests by ignoring specific concerns raised by several employees about the apparent personal nature of Gupta's expenses and by failing to tell Info's board members, disclosure counsel, or outside auditor about any of the employees' concerns. The Complaint also alleges specific transactions involving Gupta's entities that should have been disclosed. The examples describe the transactions by type and year, and provide detail regarding how the Defendants structured certain transactions to avoid disclosure. These factual allegations are the basis of the SEC's fraud and misconduct claims. The particularity of the underlying allegations meets the requirements of Rule 9(b).

B.  "Shotgun" Style Pleading

Both Das and Dean argue the Complaint engages in "shotgun" and/or "puzzle" pleading and should be dismissed as a whole. "Shotgun" pleadings are those that "incorporate every antecedent allegation by reference to each subsequent claim for relief or affirmative defense." *SEC v. Fraser*, No. CV-09-443, 2009 WL 2450508, at *14 (D. Ariz. Aug. 11, 2009) (internal quotations and citations omitted). "Puzzle" pleadings require the court and the defendant to match statements with the reason they are false or misleading. *Id.* Although the Eighth Circuit has not directly addressed the issue in a case brought by the SEC, some courts have stated that a complaint relying on shotgun or puzzle pleading fails to meet the particularity requirements of Rule 9(b). *Id.* (quoting *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 617 F. Supp. 2d 763, 784 (D. Ariz. 2009) *vacated on other grounds* 690 F. Supp. 2d 959 (D. Ariz. 2009)); *see also Wagner v. First*

11

*Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006); *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1279 (E.D. Wash 2007).

In *Wagner*, a complaint against numerous defendants alleging securities fraud was dismissed for failure to plead with particularity under Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(1).  The Eleventh Circuit noted that the complaint at issue was a shotgun pleading, "incorporating every antecedent allegation by reference into each subsequent claim for relief." *Wagner*, 464 F.3d at 1279.  The court concluded that the central problem was that the factual particularity of the previously stated allegations was "not connected to the otherwise generally pled claim in any meaningful way." *Id.*  The problem, the court stated, "was not that Plaintiffs did not allege enough facts, or failed to recite magic words; the problem lay in the fact that while Plaintiffs introduced a great deal of factual allegations, the amended complaint did not clearly link any of those facts to its causes of action." *Id.* at 1280.  The Eleventh Circuit concluded that the plaintiff's complaint should be repleaded under Rule 12(e).

Unlike the amended complaint in *Wagner*, the SEC's Complaint does not contain hundreds of paragraphs, nor do the SEC's allegations revolve around numerous defendants or voluminous documents.  Das and Dean are the only Defendants and the filings at issue are few in number.  This Court is not tasked with "untangling which (if any) act(s) engaged in by which (if any) defendant(s) applies to which (if any) claim(s)" *See Fraser*, 2009 WL 2450508, at *13.  The factual allegations are relatively brief and clear, and a more detailed statement of how those facts apply to each claim is not necessary to enable the Defendants to respond to the allegations.

12

*Wagner* was also decided under the PSLRA.   The pleading requirements under the PSLRA are more rigorous than the fraud requirements under the Federal Rules of Civil Procedure.   *See Lustgraaf v. Behrens*, – F.3d –, 2009 WL 2228120, at *3 (8th Cir. August 20, 2010).   Even if the Court found the Complaint failed to satisfy the particularity requirements of Rule 9(b), it would not take the drastic step of dismissing the case.   Where complaints alleging securities fraud lack the requisite particularity, courts have given plaintiffs leave to amend or clarify the complaint.   *See Wagner*, 464 F.3d at 1280.   Here, such a step is unnecessary to give the Defendants notice of the claims against them.

## II.   Failure to State a Claim Under Rule 12(b)(6)

### A.  Securities Fraud

The SEC's first cause of action alleges securities fraud under the Exchange Act. To establish violations of § 10(b) and Rule 10b-5, the SEC must prove: (1) a material misrepresentation or omission; (2) in connection with the purchase or sale of a security; (3) scienter; and (4) use of the jurisdictional means.   *SEC v. Kluesner*, 834 F.2d 1438, 1439 (8th Cir. 1988).   Defendants argue that the Complaint fails to plead a material misrepresentation or omission.   The Court cannot conclude as a matter of law that the Defendants' alleged misstatements and omissions were not perquisites or related party transactions under the Exchange Act.   Nor can the Court conclude as a matter of law that the alleged misstatements or omissions were immaterial.   Accordingly, the Court will not dismiss the Complaint's allegations of securities fraud under the SEC's first cause of action.

13

### 1. *Misstatements or Omissions as a Matter of Law*

#### a.  Perquisites as "Compensation"

Defendant Dean argues that the expense reimbursements were not "compensation" within the meaning of Item 402 of Regulation S-K.  Item 402 defines compensation stating "[t]his item requires clear, concise and understandable disclosures of all plan and non-plan compensation awarded to, earned by, or paid to the named executive officers . . . and directors . . . , by any person for all services rendered in all capacities to the registrant and its subsidiaries, unless otherwise specifically excluded from disclosure in this Item." 17 C.F.R. § 229.402(a)(2).  Dean argues that this case is analogous to *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662 (D. Colo. 2007).  In *Andropolis*, the district court granted a motion to dismiss in part because the disclosure required by Item 402 is limited to compensation "awarded to, earned by, or paid to" certain officials.  505 F. Supp. 2d at 685.  The court reasoned that compensation wrongfully taken from the company does not fall within Item 402's definition.  *Id.*

In contrast, the SEC argues this case is like *In re Tyson Foods, Inc., et al.*, Exchange Act Release No. 51625, 85 S.E.C. Docket 919, 2005 WL 1861834, at *1 (Apr. 28, 2005).  Through an administrative decision, the SEC in *Tyson* imposed sanctions and a cease-and-desist order against a registered corporation for failing to disclose perquisites and failing to maintain adequate controls over a director's use of company assets.  *Id.* at *9.  The director in *Tyson* received the benefits of company funds through company credit cards, vacations, personal use of company owned aircraft, lawn maintenance and other personal uses.  *Id.* at *2-3.  The SEC's order considered these expenses perquisites under

14

Item 402 and found that the registered company made misleading reports by failing to disclose the expenditures as perquisites paid to the director.[5]  *Id.* at *7.

Though both decisions reach seemingly opposite conclusions regarding the definition of *what* must be disclosed under Item 402, each decision suggests that this is a *fact specific* inquiry.  The court in *Andropolis* recognized that almost all cases interpreting Item 402 involve money or benefits knowingly given to executives by the company.  505 F. Supp. 2d at 684.  While the money in *Andropolis* clearly had been wrongfully taken, in this case, the SEC has stated a claim that Defendants knowingly caused Info to pay for Gupta's private expenses.  In other words, the Complaint sufficiently alleges that through the Defendants' actions, Info awarded the funds to Gupta.  Accordingly, the Court will not dismiss the SEC's claim on the basis that the perquisites cannot be considered compensation.

### b.  Related Party Transactions

Defendants argue that the transactions involving Aspen Leasing and Annapurna were not related party transactions.  Item 404(a) of Regulation S-K requires a description of any transaction or series of transactions exceeding a certain amount[6] in which any director, officer, or immediate family member has a direct or indirect material interest.  17

---

[5] Dean argues that *Tyson* cannot be used as persuasive authority because "[t]he findings [in the cease and desist order were] made pursuant to Respondents' Offers of Settlement and are not binding on any other person or entity in this or any other proceeding."  *Tyson*, 2005 WL 1861834, at *1 n. 2.  However, the SEC's findings in the administrative decision are still soundly reasoned and are helpful in determining whether the SEC has stated a claim in the Complaint.

[6] Prior to December 2006, the amount was $60,000.  The transaction threshold has since increased to $120,000.

C.F.R. § 229.404.  The Court agrees with the SEC that the scope of Item 404 includes the transactions as alleged in the Complaint.  Item 404 broadly defines transaction as "any financial transaction, arrangement or relationship . . . or any series of similar transactions, arrangements or relationships." § 229.404, Instructions to Item 404(a)(2).  The Complaint sufficiently alleges that Info entered into financial arrangements with entities controlled by Gupta.  These arrangements included a series of transactions between Info and Gupta's entities over the relevant period.  The tables in the Complaint sufficiently illustrate that the amounts in the series of transactions exceed the regulatory threshold and the transactions and parties are not so strikingly dissimilar that they should not be aggregated in meeting the threshold.  While discovery may reveal otherwise, the Complaint sufficiently alleges that the transactions fit within the broad definitions in Item 404.  Therefore, dismissal on these grounds is improper.

### 2.  Materiality

Defendants argue that even if the expenses were perquisites and related party transactions, they were merely misreported as expenses and therefore immaterial.  To state an actionable claim for securities fraud, the alleged misstatements must be material.  *In re AMDOCS Ltd. Sec. Litig.*, 390 F.3d 542, 547 (8th Cir. 2004).  Materiality is generally a question of fact, but misrepresentations may be "immaterial as a matter of law where a court determines that no reasonable investor could have been swayed by the alleged misrepresentation."  *Id.*  The Supreme Court has "held a fact to be material 'if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding

how to vote.'" *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090 (1991) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

Das argues that the alleged perquisite compensation and related party transactions *were* included in Info's reports as travel and entertainment expense, or business related transactions, and so any false characterization of the nature of these expenses and transactions would not have been *material* to investors whose chief interest is company profitability. Assuming the allegations in the Complaint are true, however, the Court cannot conclude that the alleged misstatements were immaterial as a matter of law. Investors may base their investment decisions, at least in part, on factors such as (1) reasonable and transparent executive compensation, (2) the company's history of independent arms-length transactions with third parties, made in the company's best interest, and (3) management ethics and accountability.

### B. Violations of Proxy Provisions

The SEC's second cause of action alleges violations of Section 14(a) of the Exchange Act. Rule 14a-9 states that proxy solicitations may not contain any statement "which, at the time and in light of the circumstances under which it was made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ." 17 C.F.R. § 240.14a-9. To state a claim under Section 14(a), the SEC "need only allege a material violation of the proxy rules."[7] *SEC v. Joseph Schlitz Brewing Co.*, 452 F. Supp. 824, 832

---

[7] The parties disagree on the standard needed to state a claim under Section 14(a). Defendants argue that the SEC must establish a violation of Rule 14a-9 and section 14(a) by showing: "(1) the proxy statement contains a material misrepresentation or omission; (2) the defendants were negligent in drafting the statement, and (3) the proxy caused an

(D. Wisc. 1978).  The Defendants contend that the Complaint does not state a claim under this standard because it does not allege that either Defendant actively participated in, or had a substantial connection to, the preparation of the proxy statements.  *See Mendell v. Greenberg*, 612 F. Supp. 1543, 1551-52 (S.D.N.Y. 1985) (dismissing a Section 14(a) claim under Rule 12(b)(6) because the defendant investment bank did not participate in drafting the proxy statement, and only allowed its name to be used in soliciting proxies).  The term "solicitation" is construed broadly to include any "communication to security holders under circumstances reasonably calculated to result in the procurement, withholding or revocation of a proxy."  17 C.F.R. § 240.14a-1(l).

The Court cannot conclude that the Complaint fails to meet this standard.  In contrast to *Mendell*, the Complaint directly alleges that Dean solicited proxies from shareholders in connection with Info's 2005 proxy statement.  (Compl. ¶ 19b.)  Where there is no active participation in the solicitation effort, "a substantial connection must be shown between the use of the name of the party to be charged with liability and the solicitation effort*." Lazzaro v. Manber*, 701 F. Supp. 353, 367 (E.D.N.Y. 1988) (citing *Mandell*, 612 F. Supp. at 1551).  In *Lazzaro*, the court allowed the action to proceed because the complaint alleged that defendants "were responsible for knowing misrepresentations or omissions therein, with the express purpose of thereby inducing shareholder consent."  *Id.* The court expressly compared that allegation to the facts supporting the dismissal in *Mendell.*  In *Mendell*, the complaint did not allege that the

---

injury to plaintiffs."  *In re BankAmerica Corp. Sec. Litig.*, 78 F. Supp. 2d 976, 988-89 (E.D. Mo. 1999).  Because that is the applicable standard under the PSLRA, however, for purposes of the pending motions the Court will apply the standard articulated in *Joseph Schlitz Brewing Co.*

18

defendant investment bank engaged in knowing or intentional misconduct.  *Id.* (citing Mendell, 612 F. Supp. at 1552).  In contrast to *Mendell*, the SEC here alleges that Defendants engaged in knowing or intentional misconduct "under circumstances reasonably calculated to result in the procurement" of proxy statements.  17 C.F.R. § 240.14a-1(l).  Thus, taken as a whole, the allegations are sufficient to warrant a responsive pleading.

### C.  Circumvention of Internal Controls

Section 13(b)(5) states that "[n]o person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account described in [§ 13(b)(2)]."  15 U.S.C. § 78m(b)(5).  The Defendants argue this cause of action should be dismissed largely because the Complaint fails to describe Info's applicable internal controls.  In *SEC v. Berry*, 580 F. Supp. 2d 911, 924-25 (N.D. Cal. 2008), a district court dismissed a claim under section 13(b)(5) because, while the complaint implied that certain controls were insufficient or circumvented, it did not state what the controls were.  In contrast, the Complaint herein alleges that Das and Dean approved reimbursement requests that "lacked sufficient explanation of business purpose and supporting documentation." (Complaint ¶ 24.) The Complaint describes Info's internal policies for expense reimbursement requirements as requiring "sufficient documentation and demonstration of business purpose in order to reimburse an Info employee's expense as a business expense and to not treat the expense as compensation to the employee." (*Id*. ¶ 23.)  Unlike *Berry*, the Complaint in this case states generally the controls that were violated and describes how Defendants failed to meet the requirements.  The Court cannot conclude that the SEC failed to state a claim merely because the Complaint lacks detail

19

regarding the amount and type of documentation and explanation required to demonstrate a business purpose.  The Complaint sufficiently gives Defendants notice that their actions contravened, or fell short of, Info's internal controls for business reimbursement.[8]

### D.  False Certifications Under Rule 13a‑14

Defendants Das and Dean both claim that the SEC cannot state an independent claim for relief under Rule 13a-14 of the Exchange Act. Some district courts addressing this issue have concluded that a false Sarbanes-Oxley certification does not state an independent violation of securities law.  *SEC v. Mozilo*, No. CV 09-3994, 2010 WL 3656068 at *21 (C.D. Cal. Sep. 16, 2010); *SEC v. Black*, 2008 WL 4394891 at *16-17 (N.D. Ill. Sept 24, 2008).  However, district courts have noted that the SEC may proceed under Rule 13a-14 because of the language in 15 U.S.C. § 78u(d)(1) which enables the SEC to bring an action in federal district court "to enjoin" any "acts or practices constituting a violation of any provision of this title [or] the rules or regulations thereunder."  *SEC v. Brown*, No. 09-1423, 2010 WL 3786563 at *12 (D.D.C. Sep. 27, 2010).  The Court agrees that this statutory language indicates that the SEC's Fourth Claim for Relief should not be dismissed on the grounds suggested by the Defendants.

Rule 13a-14 requires an issuer's principal financial officer to certify to the best of his or her knowledge that there are no untrue statements of material fact or omissions of a material fact in reports filed under Section 13(a) of the Exchange Act.  17 C.F.R. § 240.13a-14.  For the reasons described above, the Complaint sufficiently alleges that

---

[8] Because the Court determined that the Complaint sufficiently alleges that Defendants circumvented Info's internal controls, a this juncture the Court need not address whether the SEC sufficiently alleged the alternative theory that Defendants knowingly falsified books and records.

perquisites paid to Gupta, and related party transactions resulting in payments to Gupta's entities, were understated. Further, the Complaint alleges that Defendants certified Info's Forms 10-K during the applicable period, bearing the understated amounts. Thus, the Complaint states a claim for relief.

### E.  False Statements to Accountants

The SEC alleges Defendants violated Rule 13b2-2 that prohibits corporate officers from directly or indirectly making materially false or misleading statements or omissions to accountants in connection with audits and financial statement examinations. 17 C.F.R. § 240.13b2-2. The Complaint alleges that Das signed Info's management representations letters to its external auditors for 2003 through 2005, and Dean signed them from 2004 through 2006. In these letters, Defendants represented to the external accountants that all related party transactions had been properly disclosed. Defendants claim these letters were signed according to the Defendants' "best knowledge and belief" and the SEC has not alleged the Defendants' knowledge and belief was different from what it was represented to be. However, the Complaint specifically alleges that Das and Dean aided in structuring several transactions for the purpose of avoiding disclosure. Taken with the other allegations in the Complaint, the SEC sufficiently alleges a violation of Rule 13b2-2.

### F.  Aiding and Abetting Claims

In causes of action VI through VIII, the SEC alleges that Das and Dean each aided and abetted the commission of Info's Section 13(a) violations of filing materially false and misleading annual and quarterly reports. Liability for aiding and abetting violations of securities laws is codified in Section 20(e) of the Exchange Act. 15 U.S.C. § 78t(e). Section 20(e) states that for any action brought by the SEC for securities fraud, "any

21

person that knowingly provides substantial assistance to another person in violation of [securities laws and regulations], shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided."  The parties disagree as to the scienter required.  Das and Dean state that Section 20(e) requires "actual knowledge" that a defendant is assisting in conduct that violates the Exchange Act.  *See SEC v. KPMG LLP.*, 412 F. Supp. 2d 349, 383-84 (S.D.N.Y. 2006) (holding that Section 20(e) requires actual knowledge and does not encompass mere recklessness).  The SEC argues that Section 20(e) encompasses "recklessness" because the Dodd-Frank Act, signed into law on July 21, 2010, amends section 20(e) to include recklessness. *See* Pub. L. No. 111-203, § 929O, 124 Stat. 1376, 487 (2010).  Section 929O amends Section 20(e) by adding the word "recklessly" after the word "knowingly."  The SEC contends that Section 929O should be applied retroactively because it is a clarifying amendment.

The Court concludes that under either standard, the Complaint survives a motion to dismiss. As stated above, whether the Complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

The parties agree that to establish aiding and abetting liability, the SEC must demonstrate: (1) a primary violation of the securities law by another; (2) knowledge of the primary violation by the aider and abettor; (3) and substantial assistance by the aider and abettor in achieving the primary violation.  *SEC v. Thielbar*, 2008 WL 4360964, at *9 (D.S.D. Sep. 24, 2008) (citing *K & S P'ship v. Cont'l Bank*, 952 F.2d 971, 977 (8th Cir. 1991)).  The Complaint alleges that Info submitted Forms 10-K and proxy statements that

22

were materially false and misleading because they failed to disclose perquisites paid to Gupta and related party transactions with Gupta's entities.  If true, these facts form a primary violation of the Exchange Act by another.  The SEC also alleges that Defendants knew, or were reckless in not knowing, that the reports reflected misleading information. While this conclusory allegation may be insufficient to state a claim, the Complaint also details the Defendants' actions in approving Gupta's receipts and structuring transactions to avoid disclosure.  Taking these allegations as true, they support an inference that Defendants both had actual knowledge that they were aiding a violation of securities laws and substantially assisted in the commission of the violation.  In other words, the Court concludes that these allegations contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" to substantiate the necessary elements of the plaintiff's claim.  *Twombly*, 550 U.S. at 556. Discovery may show that Defendants lacked actual knowledge, acted recklessly, or did neither.  Regardless, dismissal before discovery is unwarranted.

## CONCLUSION

The relative simplicity of the allegations in the Complaint, and the factual detail provided by the SEC in support of its claims, are sufficient to provide indicia of reliability and to permit the claims to survive dismissal under Rule 9(b).  The Complaint also states claims upon which relief can be granted, in that it presents enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the SEC's claims, and dismissal under Rule 12(b)(6) is not warranted.

23

Accordingly,

IT IS ORDERED:

1.     Defendants' Motions to Dismiss (Filing Nos. 16, 25) are denied; and

2.     Defendants Rajnish K. Das and Stormy L. Dean must respond to the Complaint within twenty-one (21) days of this Memorandum and Order.


DATED this 4th day of November, 2010.

                          BY THE COURT:


                          S/Laurie Smith Camp
                          United States District Judge