incentive compensation.

AU Section 312, *Audit Risk and Materiality in Conducting an Audit*, provides additional guidance regarding the assessment of materiality. It indicates that "financial statements are materially misstated when they contain misstatements whose effect, either individually or in the aggregate, is important enough to cause them not to be presented fairly, in all material respects, in conformity with generally accepted accounting principles... [and those misstatements] can result from errors or fraud." Errors are defined as "unintentional misstatements or omissions of amounts or disclosures in financial statements... [and] may involve mistakes in gathering or processing data from which financial statements are prepared."[7]

In assessing whether the effect of misstatements is material, AU § 312 re-iterates the guidance in SFAC No. 2 that an auditor (and, correspondingly, the financial statement preparer) "should consider their nature and amount... of items in the financial statements...."[8]

Furthermore, AU Section312 states:

> As a result of the interaction of quantitative and qualitative considerations in materiality judgments, misstatements of relatively small amounts that come to the auditor's attention could have a material effect on the financial statements. For example, an illegal payment of an otherwise immaterial amount could be material if there is a reasonable possibility that it could lead to a material contingent liability or a material loss of revenue.[9]

AU Section 9312, *Audit Risk and Materiality in Conducting an Audit: Auditing Interpretation of Section 312*,[10] indicates that "a misstatement causes the financial

---

[7] AU Section 312.04-06.
[8] AU Section 312.09.
[9] AU Section 312.11.
[10] Although AU Section 9312 was not issued until December 2000, it established no new standards.

statements not to be in conformity with generally accepted accounting principles… [and] may consist of any of the following:[11]

    a.  A difference between the amount, classification, or presentation of a reported financial statement element, account, or item and the amount, classification, or presentation that would have been reported under generally accepted accounting principles.

    b.  The omission of a financial statement element, account, or item.

    c.  A financial statement disclosure that is not presented in accordance with generally accepted accounting principles.

    d.  The omission of information required to be disclosed in accordance with generally accepted accounting principles.

As noted above, materiality evaluations include both quantitative and qualitative considerations. AU Section 9312 provides the following list of qualitative factors to be considered in evaluating whether a misstatement is material to the financial statements:[12]

    a.  The potential effect of the misstatement on trends, especially trends in profitability.

    b.  The potential effect of the misstatement on the entity's compliance with loan covenants, other contractual agreements, and regulatory provisions.

    c.  The significance of the financial statement element affected by the misstatement, for example, a misstatement affecting recurring earnings as contrasted to one involving a non-recurring charge or credit, such as an extraordinary item.

    d.  The significance of the misstatement or disclosures relative to known user needs, for example:

        •  The significance of earnings and earnings per share to public-company investors and the significance of equity amounts to private-company creditors.

---

Instead, this Interpretation of AU Section 312 merely provided additional guidance based on the principles set forth in SFAC No. 2 and SAB 99.

[11] AU Section 9312.02.

[12] AU Section 9312.17.

- The magnifying effects of a misstatement on the calculation of purchase price in a transfer of interests (buy/sell agreement).
- The effect of misstatements of earnings when contrasted with expectations.

e. The motivation of management with respect to the misstatement, for example, (i) an indication of a possible pattern of bias by management when developing and accumulating accounting estimates or (ii) a misstatement precipitated by management's continued unwillingness to correct weaknesses, such as weaknesses in internal control policies and procedures, in the financial reporting process.

With respect to the applicability of a materiality assessment to quarterly periods, SEC Regulation S-X ¶ 10-01(b) 8 requires registrants to affirmatively state that "interim financial statements furnished shall reflect all adjustments which are, in the opinion of management, necessary to a fair statement of the results for the interim periods presented.... If all such adjustments are of a normal recurring nature, a statement to that effect shall be made." Furthermore, SAB 99 states that "assessments of materiality should occur not only at year-end, but also during the preparation of each quarterly or interim financial statement."

<u>Materiality of Misstatements</u>

*Perquisites*

The SEC requires that "clear, concise, and understandable" disclosures regarding executive compensation be reported within a company's annual reports on Form 10-K.[13] While the particularities of the SEC's disclosure requirements were expanded in 2006, the overall requirements remain the same. Reg. 402 specifies the inclusion of <u>all</u> compensation awarded to, earned by, or paid to executive officers and directors by any person in exchange for services rendered to the company and its subsidiaries.

---

[13] Reg. 402(a)(2); see also *SEC Handbook, Rules and Forms for Financial Statements and Related Disclosures*, As of December 2000, Commerce Clearing House, Inc., Chicago, IL. Page 33, 211.

Prior to 2006, the SEC indicated that perquisites and other personal benefits or property fell within the category of "other compensation" and required separate disclosure and explanation "unless the aggregate amount of such compensation is the lesser of either $50,000 or 10% of the total annual salary and bonus reported for the named executive officer."[14]  A description was required when the value of one of these additional compensation items exceeded 25% of the total perquisites and other personal benefits.[15]

The SEC then revised Reg. 402 by lowering the threshold for reporting perquisites and other personal benefits to $10,000, requiring the identification of each item type, as well as requiring a footnote or narrative disclosure, for those items whose value exceeds the greater of $25,000 or 10% of the total perquisites and other personal benefits for the named officer.[16]

Table 5.1 summarizes the perquisite compensation that Info should have disclosed in its Forms 10-K and proxy statements.  The amounts for each class of perquisites exceeded the threshold for separate disclosure and explanation under Reg. 402.  Info did not disclose the true amount of perquisites in the "All Other Compensation" column in the Summary Compensation Table in its proxy statements.  In addition to the incorrect perquisite amounts disclosed in the 2007 annual proxy statement, there was no footnote, or narrative, explaining the $96,000 for Mr. Gutpa's "Home office allowance," as was

---

[14] Prior to the revisions to Reg. 404 in 2006, this requirement was set forth in Reg. 402(b)(2)(iii)(C)(1).
[15] Prior to the revisions to Reg. 404, this requirement was set forth in the Instructions to Item 402(b)(2)(iii)(C).
[16] SEC Release No. 33–8732A, *Executive Compensation and Related Person Disclosure*, (Aug. 29, 2006) [71 FR 53158]. These revisions were adopted on November 7, 2006 for Forms 8-K for triggering events that occur on or after November 7, 2006 and in Forms 10-K for fiscal years ending on or after December 15, 2006. See also Info 001442 – 43.

required by Reg. 402 since this amount exceeded the threshold for explanatory disclosure.

**Table 5.1**
**Undisclosed Perquisite Compensation**

|  | 2003 | 2004 | 2005 | 2006 | Total |
|---|---|---|---|---|---|
| Aircraft travel | $ 870,000 | $ 538,200 | $ 767,500 | $ 342,800 | $2,518,500 |
| Yacht expenses | $ 549,900 | $ 559,500 | $ 449,000 | $ 633,400 | $2,191,800 |
| Personal credit card expenses | $ 312,100 | $ 327,500 | $ 292,900 | $ 255,100 | $1,187,600 |
| Residential expenses | $ 174,400 | $ 319,700 | $ 119,500 | $   3,900 | $ 617,500 |
| Automobile expenses | $  58,400 | $  93,500 | $ 101,200 | $ 109,800 | $ 362,900 |
| Country club and other dues and expenses | $ 100,000 | $ 251,900 | $ 114,200 | $  88,100 | $ 554,200 |
| Life insurance premiums | $  75,700 | $  75,700 | $  21,400 |  | $ 172,800 |
| Unpaid office rent | $  19,200 | $  19,200 |  |  | $  38,400 |
| **Total** | $2,159,700 | $2,185,200 | $1,865,700 | $1,433,100 | $7,643,700 |

Note: Amounts reported in this table are taken from the section on perquisites.

Info's 2003 through 2006 Forms 10-K, which incorporated by reference the executive compensation section of its proxy statements, materially understated Gupta's compensation each year by failing to separately disclose more than $7.5 million in perquisites he received from 2003 through 2006. Undisclosed perquisite compensation ranged from $1.3 million in 2006 to $2.2 million in both 2003 and 2004. These amounts are summarized in Table 5.2.

**Table 5.2**
**Summary of Undisclosed Perquisites**

|  | 2003 | 2004 | 2005 | 2006 | Total |
|---|---|---|---|---|---|
| Reported perquisites | $   6,000 | $   6,500 | $   7,000 | $ 112,600 | $ 132,100 |
| Actual perquisites | $2,159,700 | $2,185,200 | $1,865,700 | $1,433,100 | $7,643,700 |
| Undisclosed perquisite compensation | $2,153,700 | $2,178,700 | $1,858,700 | $1,320,500 | $7,511,600 |
| Percent understatement of perquisite compensation | 99.7% | 99.7% | 99.6% | 92.1% | 98.3% |

Note: The reported perquisites are taken from the proxy statements filed with the SEC on April 4, 2004; March 28, 2005; April 14, 2006; and April 30, 2007.

The 2003 through 2006 Forms 10-K, which incorporated by reference the executive compensation section of its proxy statements, were materially false and misleading because of the undisclosed perquisites reported in Table 5.1 and summarized in Table 5.2. The undisclosed perquisites are quantitatively material since nearly all of the payments made each year for each of the categories of perquisites exceed the disclosure threshold of $50,000 (or less) prior to 2006 and $10,000 for 2006. The undisclosed perquisites are qualitatively material because the perquisite disclosures were not reliable.[17] The amounts were underreported by an average of 98% during the period from 2003 through 2006, meaning that the amounts disclosed did not come close to revealing the perquisites that Mr. Gupta received.

*Related Party Transactions*

As indicated above, accounting literature also requires that related party transactions be disclosed. In particular, Info was required to disclose a description of transactions, including transactions to which no amounts or nominal amounts were ascribed, and the amount of those transactions.[18] In addition, as explained above, Reg. 404 requires the disclosure of transactions with management and others.

Table 5.3 shows the related party transactions that Info was required to disclose pursuant to U.S. GAAP and Reg. 404. Info understated its related party transactions for 2003, 2004, and 2005 including the third quarter of 2004.

---

[17] In addition, SAB 99 and AU Section 9312 mention the impact that errors have on management compensation and management's continued unwillingness to correct weaknesses in internal controls in the financial reporting process as factors relevant to the determination of materiality.
[18] SFAS 57, paragraph 2.

**Table 5.3**
**Related Party Transactions**

|  | 2003 | 2004 | 2005 |
|---|---|---|---|
| Related Party Payments: | | | |
| Aircraft (paid to Annapurna) | $1,125,000 | $929,000 | $265,000 |
| Undisclosed aircraft (paid to NetJets) | $1,346,000 | $836,000 | $179,000 |
| Homes (paid to Annapurna) | $120,000 | $120,000 | |
| Yacht (paid to Annapurna) | $370,000 | $473,000 | $32,000 |
| Autos (paid to Aspen Leasing) | $41,000 | $58,000 | |
| Rent free use of Info's building by Mr. Gupta's entities | $19,000 | $19,000 | |
| Undisclosed Autos Purchased from Aspen Leasing | | | $182,000 |
| Undisclosed Aircraft Purchased from Annapurna | $1,099,000 | | |
| Undisclosed payments to Jess Gupta | $67,000 | $58,000 | $58,000 |
| Total Amount of Transactions | $4,187,000 | $2,493,000 | $716,000 |
| Disclosed Amount of Transactions With Annapurna | $2,232,000 | $1,524,000 | $297,000 |
| **Total Undisclosed Related Party Transactions** | **$1,955,000** | **$969,000** | **$419,000** |
| **Percent Understatement** | **46.7%** | **38.9%** | **58.5%** |
| **Total Understated Related Party Transactions for Q3 '04[19]** | | **$1,650,000** | |

*Note: The amounts in this table are taken from the section on related party transactions.*

Info was required under SEC Rules and Regulations to disclose the transactions reported in Table 5.3. Info's Forms 10-K and proxy statements in which directors were nominated for election needed to include information required by Reg. 404. Prior to December 15, 2006, Reg. 404 required a description of any transaction or series of similar transactions exceeding $60,000 in which Info was a party and in which any director, executive officer, or any member of their immediate families has a direct or indirect material interest. Item 404(a) requires disclosure in Forms 10-K and proxy statements of the person and the person's relationship to the registrant, the nature of the person's interest in the transaction, and, where practicable, the amount of the person's interest in the transaction.

---

[19] There were no related party transactions disclosed in Info's Forms 10-Q for fiscal for 2004.

The 2003, 2004 and 2005 Forms 10-K and the Q3 '04 Form 10-Q were materially false and misleading because of the undisclosed related party transactions reported in Table 5.3. U.S. GAAP does not specify a quantitative materiality threshold for disclosure; however, Reg. 402 does. The undisclosed related party transactions are quantitatively material since nearly all of the payments made each year for each of the categories of transactions exceeded the disclosure threshold of $60,000. The undisclosed related party transactions are qualitatively material because the related party disclosures were not reliable.[20] The disclosures for transactions with Mr. Gupta's entities, the related parties, did not come close to revealing the true amount of related party transactions.

Consistent with the requirements discussed above, Info grasped the importance of the related party disclosures in its 2007 Form 10-K when it began to disclose more information about related party transactions, such as the free rent to Gupta's entities and payments associated with Jess Gupta's condominium.

---

[20] In addition, SAB 99 and AU Section 9312 mention the impact that errors have on management compensation and management's continued unwillingness to correct weaknesses in internal controls in the financial reporting process as factors relevant to the determination of materiality.

**EXHIBIT A**

**STEVEN L. HENNING, Ph.D., CPA**
**CURRICULUM VITAE**

622 Third Avenue
New York, NY 10017-6701
212-201-3179 (direct)
shenning@markspaneth.com

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| 2004 to present | **Marks Paneth & Shron LLP** |
| 2006 to Present | Partner, Litigation and Corporate Financial Advisory Services |
| 2004 to 2005 | Director, Litigation and Corporate Financial Advisory Services |
| | |
| 2002 to 2003 | **Southern Methodist University** |
| 1997 to 2001 | Assistant Professor |
| | Received university-wide and other teaching awards |
| | |
| 2001 to 2002 | **United States Securities and Exchange Commission** |
| | Academic Fellow, Office of the Chief Accountant |
| | |
| 1994 to 1997 | **University of Colorado** |
| | Assistant Professor |
| | Received university-wide and other teaching awards |
| | |
| 1990 to 1994 | **University of Wisconsin** |
| | Teaching Assistant |
| | |
| 1987 to 1990 | **Ryder System, Inc.** |
| | Manager, Acquisitions and Corporate Financial Planning |
| | |
| 1983 to 1987 | **Ernst & Whinney, Milwaukee, WI (now Ernst & Young)** |
| 1987 | Audit Manager |
| 1985 to 1987 | Audit Senior |
| 1984 to 1985 | Advanced Staff Accountant |
| 1983 to 1984 | Staff Accountant |

## EDUCATION

Ph.D., University of Wisconsin-Madison, 1994
MBA, University of Miami (FL), 1990
BBA, University of Wisconsin-Milwaukee, 1983

## PROFESSIONAL CERTIFICATION

Certified Public Accountant, New York, 2005 and Wisconsin, 1986

**EXHIBIT A**

## PROFESSIONAL MEMBERSHIPS

American Institute of Certified Public Accountants
American Accounting Association
New York State Society of Certified Public Accountants
Wisconsin Institute of Certified Public Accountants

## PROFESSIONAL ACTIVITIES

| | |
|---|---|
| 2006 to present | **NASDAQ Listing Qualifications Panel**<br>Panel of independent experts that makes final determination of listing status on appeal after company is delisted by NASDAQ |
| 2009 to 2010 | **Anti-Money Laundering & Counter Terrorist Financing Committee**<br>Committee assesses and communicates the business impact of AML/CTF regulations and laws (Vice Chair) |
| 2005 to 2007 | **SEC Regulations Committee**<br>Committee acts as the primary liaison between the accounting profession and the SEC on technical matters relating to SEC rules and regulations |
| 2005 to present | **JHI Sarbanes-Oxley Special Interest Group Chair**<br>The group is the primary resource for Sarbanes-Oxley implementation and compliance issues for the more than 140 member firms of the JHI association of member firms |
| 2004 | **United States Department of Justice**<br>Continuing Education Course Presentation to the Criminal Division (April 2004) |
| 2003 to 2005 | **Editorial Review Board, Accounting Horizons**<br>A journal of the American Accounting Association intended to serve researchers, practitioners, standard setters, teachers and students. |
| 2003 to present | **Center for Advanced Technologies**<br>Director on board of non-profit organization advancing knowledge about valuing and monetizing intellectual property |
| 2002 to 2004 | **American Accounting Association**<br>SEC Liaison Committee (Chair, 2003 to 2004) |
| 2001 to 2004 | **American Institute of Certified Public Accountants**<br>Valuation of Private Equity Securities Taskforce (subcommittee of AcSEC) |
| 2003 to present | **IASeminars Ltd. Training**<br>Taught SEC, FASB and PCAOB courses to foreign registrants |

A - 2

EXHIBIT A

| | |
|---|---|
| 2002 to 2003 | **United States Securities and Exchange Commission**<br>Consulted with SEC on auditor oversight issues |
| 2001 to 2005 | **Appraisal Issues Taskforce**<br>Taskforce commissioned by the SEC to advance understanding of fair value and reporting issues in mergers & acquisitions |
| 2000 to 2001 | **Goldman, Sachs & Co.**<br>Taught math and accounting camp for new investment banking associate and analyst hires from around the world |

## PUBLICATIONS AND PRESENTATIONS

Published articles (co-authored) in the following journals: Journal of Accounting Research; Journal of the American Taxation Association; Review of Quantitative Finance and Accounting; Journal of Business, Finance and Accounting; Journal of Hospitality Financial Management; and Issues in Accounting Education

Presentations of scholarly work at annual meetings of the American Accounting Association, at the Financial Accounting Standards Board (FASB), and at more than a dozen universities

## COMMUNITY SERVICE

Stamford, CT Youth Sports Coach, 2004 to present
Habitat for Humanity, 2002 to 2003
Faculty Mentor, 1998 to 2001 and 1995 to 1997

**EXHIBIT B**

## CASES IN WHICH STEVEN L. HENNING HAS
## TESTIFIED AS AN EXPERT AT TRIAL AND/OR DEPOSITION
## WITHIN THE PRECEDING FOUR YEARS

In Re: Vanderbilt Mortgage and Finance, Inc. (Plaintiff) v. Cesar Flores and Alvin E. King (Defendants) and Maria M. Trevino and Arthur Trevino (Intervenors) v. Clayton Home, et al.
United States District Court for the Southern District of Texas, Corpus Christi Division
No. 2:09-CV-00312
Expert witness for defendants Flores and King and the intervenors
Testimony at deposition on August 9, 2010

In Re: Scientific-Atlanta, Inc. Securities Litigation
United States District Court for the Northern District of Georgia, Atlanta Division
No. 1:01-CV-1950-RWS
Expert witness for the plaintiff investors
Testimony at deposition on March 25, 2009

Chemtech Royalty Associates, L.P., By Dow Europe, S.A., as Tax Matters Partner, v. United States of America
United States District Court for the Middle District of Louisiana
Nos. 05-944-RET-DLD, 06-258-RET-DLD, 07-405-RET-DLD
Expert witness for the Defendant United States of America
Testimony at deposition on January 30, 2009

In Re: MBNA Corp. Securities Litigation
United States District Court for the Northern District of California
No. 1:05-CV-00272-GMS
Expert witness for the plaintiff investors
Testimony at deposition on October 2, 2008

In Re: JDS Uniphase Corporation Securities Litigation
United States District Court for the Northern District of California
No. C 02-1486 CW (EDL)
Expert witness for the plaintiff investors
Testimony at deposition on March 20, 2007
Testimony at trial October 29, 2007

**EXHIBIT C**

### PUBLICATIONS WITHIN PRECEDING TEN YEARS

1.   Henning, S. L., and G. S. Sacks. 2011. Empowering Intellectual Property.
     Metropolitan corporate Counsel Vol. 19, No. 2 (January 31, 2011): 23.

2.   Henning, S. L. 2010. The Case for the "Gold Standard": Why the U.S. Must
     Adopt International Financial Reporting Standards. Executiveview.com (Winter
     2010).

3.   Shearer, Robert and Members of the National Knowledge and Intellectual
     Property Taskforce. Creating New Wealth From IP Assets. Hoboken, NJ: John
     Wiley & Sons, Inc., 2007 (contributing author).

4.   Collins, D., and S. L. Henning. 2004. Write-down timeliness, line-of-business
     disclosures and investors' interpretations of segment divestiture announcements.
     *Journal of Business, Finance and Accounting* 31 (November/December): 1261-
     1299.

5.   Henning, S. L., W. H. Shaw, and T. Stock. 2004. The amount and timing of
     goodwill write-offs and revaluations: Evidence from U.S. and U.K. firms.
     *Review of Quantitative Finance and Accounting*, forthcoming.

6.   Henning, S. L., and W. H. Shaw. 2003. Is the selection of the amortization
     periods for goodwill a strategic choice? *Review of Quantitative Finance and
     Accounting* 20: 315-333.

**EXHIBIT D**

## HOURLY RATES

My hourly billing rate on this engagement is $475 per hour.  Support staff is billed at rates ranging from $175 to $275 per hour.

**EXHIBIT E**

**MATERIALS CONSIDERED**

Pleadings:
    SEC v. Rajnish K. Das and Stormy L. Dean - Complaint
    SEC's Responses to Rajnish J. Das' First Set of Interrogatories, Requests for Production and
    Requests for Admission, dated September 30, 2010
    SEC's Responses to Stormy L. Dean's First Set of Interrogatories, dated January 21, 2011
    Memorandum in Support of Defendant Rajnish K. Das' Motion to Dismiss, date filed 6/10/10
    Brief in Oppositions to Defendant Rajnish K. Das' Motion to Dismiss, date filed 017/01/10

SEC Filings:
    INFOUSA 10-K FYE 12-31-2003
    INFOUSA 10-K FYE 12-31-2004
    INFOUSA 10-K/A FYE 12-31-2004 (Amendment No 1)
    INFOUSA 10-K FYE 12-31-2005
    INFOUSA 10-K FYE 12-31-2006
    INFOUSA 10-K FYE 12-31-2007 (NT)
    INFOUSA 10-K/A FYE 12-31-2007
    INFOUSA 10-K FYE 12-31-2008
    INFOUSA 10-K/A FYE 12-31-2008 (Amendment No 1)
    INFOUSA 10-K/A FYE 12-31-2008 (Amendment No 2)
    INFOUSA 10-K/A FYE 12-31-2008 (Amendment No 3)
    INFOUSA 10-K/A FYE 12-31-2009 (Amendment No 1)
    INFOUSA 10-Q 03-31-2003
    INFOUSA 10-Q 06-30-2003
    INFOUSA 10-Q 09-30-2003
    INFOUSA 10-Q 03-31-2004
    INFOUSA 10-Q 06-30-2004
    INFOUSA 10-Q 09-30-2004
    INFOUSA 10-Q 03-31-2005
    INFOUSA 10-Q/A 03-31-2005
    INFOUSA 10-Q 06-30-2005
    INFOUSA 10-Q/A06-30-2005
    INFOUSA 10-Q 09-30-2005
    INFOUSA 10-Q/A 09-30-2005
    INFOUSA 10-Q 03-31-2006
    INFOUSA 10-Q 06-30-2006
    INFOUSA 10-Q 09-30-2006
    INFOUSA 10-Q 03-31-2007
    INFOUSA 10-Q 06-30-2007
    INFOUSA 10-Q 09-30-2007

Proxy Filings: (date filed)

May 2, 1999
October 7, 1999
October 21, 1999
April 28, 2000
May 21, 2001
May 3, 2002
April 21, 2003
May 4, 2004
February 10, 2005
April 29, 2005
March 29, 2006
April 3, 2006 -1
April 3, 2006 -2
April 3, 2006 -3
April 6, 2006
April 12, 2006
April 13, 2006
April 14, 2006
April 17, 2006-1
April 17, 2006-2
April 18, 2006-1
April 18, 2006-2
April 19, 2006
April 20, 2006-1
April 20, 2006-2
April 21, 2006
April 24, 2006-1
April 24, 2006-2
April 25, 2006
April 26, 2006-1
April 26, 2006-2
April 27, 2006-1
April 27, 2006-2
April 28, 2006
May 2, 2006-1
May 2, 2006-2
May 3, 2006-1
May 3, 2006-2
May 3, 2006-3
May 4, 2006
May 8, 2006
May 10, 2006-1
May 10, 2006-2
May 12, 2006-1

May 12, 2006-2
May 16, 2006-1
May 16, 2006-2
May 16, 2006-3
May 17, 2006-1
May 17, 2006-2
May 18, 2006-1
May 18, 2006-2
May 18, 2006-3
May 19, 2006
May 22, 2006-1
May 22, 2006-2
May 23, 2006
May 24, 2006
May 1, 2007
May 10, 2007
May 17, 2007-1
May 17, 2007-2
May 18, 2007
May 25, 2007
May 29, 2007-1
May 29, 2007-2
May 30, 2007
May 31, 2007-1
May 31, 2007-2
June 1, 2007
June 4, 2007
June 5, 2007-1
June 5, 2007-2
June 6, 2007
June 7, 2007
June 7, 2007
June 11, 2007

Wells Submissions on Behalf of:

| | |
|---|---|
| Das, Rajnish | October 30, 2009 |
| Dean, Stormy L. | October 21, 2009 |
| Raval, Vasant | November 02, 2009 |

SEC Investigative Exhibits: 1-628

Investigative Transcripts:

| | |
|---|---|
| Burger, Jill | January 13, 2009 |
| Burger, Jill | January 14, 2009 |
| Das, Rajnish | June 9, 2009 |
| Das, Rajnish | June 10, 2009 |

E-3

| | |
|---|---|
| Dean, Stormy | June 16, 2009 |
| Dean, Stormy | June 17, 2009 |
| Dean, Stormy | June 18, 2009 |
| Frye, Steve | August 26, 2009 |
| Frye, Steve | August 27, 2009 |
| Gupta, Vinod | September 14, 2009 |
| Gupta, Vinod | September 15, 2009 |
| Gupta, Vinod | September 16, 2009 |
| Gupta, Vinod | September 17, 2009 |
| Heckart, Alan | April 6, 2009 |
| Heckart, Alan | April 7, 2009 |
| Raval, Vasant | August 18, 2009 |
| Raval, Vasant | August 19, 2009 |
| Raval, Vasant | August 20, 2009 |
| Raval, Vasant | August 21, 2009 |
| Schafer, Tom | January 21, 2009 |
| Schafer, Tom | January 22, 2009 |
| Schultz, Mike | May 6, 2009 |
| Wellman, Alexi | September 9, 2009 |
| Wellman, Alexi | September 10, 2009 |
| Hoffman, Timothy | January 28, 2009 |
| Nietzel, Paul | March 30, 2009 |
| Nietzel, Paul | March 31, 2009 |
| Vakili, Fred | May 19, 2009 |
| Vakili, Fred | May 20, 2009 |
| Van Gilder, Shelly | March 16, 2009 |
| Borda, Richard | March 4, 2009 |
| Borda, Richard | March 5, 2009 |
| Dwornicki, Mike | April 8, 2009 |
| Haddix, George | April 1, 2009 |
| Haddix, George | April 2, 2009 |
| Haddix, George | July 23, 2009 |
| Hoffman, Timothy | April 28, 2009 |
| Kahn, Martin | July 8, 2009 |
| Kahn, Martin | July 9, 2009 |
| Kaplan, Elliott | July 14, 2009 |
| Kaplan, Elliott | July 15, 2009 |
| Kaplan, Elliott | August 27, 2009 |
| Madson, Eric | May 13, 2009 |
| Madson, Eric | May 13, 2009 |

| | |
|---|---|
| Madson, Eric | August 28, 2009 |
| Milligan, Cynthia | June 24, 2009 |
| Samson, Reed | May 11, 2009 |
| Samson, Reed | May 12, 2009 |
| Stryker, Charles | April 29, 2009 |
| Tyler, Sherman | February 24, 2009 |
| Walker, Dennis | August 11, 2009 |

Binders Provided by Hogan & Hartson LLP

| | |
|---|---|
| IG_ER000001 | IG_ER000644 |
| IG_ER000645 | IG_ER001017 |
| IG_ER001018 | IG_ER001356 |
| IG_ER001357 | IG_ER001754 |
| IG_ER001755 | IG_ER001975 |
| IG_ER001976 | IG_ER002118 |
| IG_ER002119 | IG_ER002348 |
| IG_ER002349 | IG_ER002628 |
| IG_ER002629 | IG_ER003109 |
| IG_ER003110 | IG_ER003558 |
| IG_ER003559 | IG_ER003986 |
| IG_ER003987 | IG_ER004385 |
| IG_ER004386 | IG_ER004991 |
| IG_ER004992 | IG_ER005384 |
| IG_ER005385 | IG_ER005827 |
| IG_ER005828 | IG_ER006649 |
| IG_ER006650 | IG_ER007045 |
| IG_ER007046 | IG_ER007265 |
| IG_ER007266 | IG_ER007669 |
| IG_ER007670 | IG_ER008107 |
| IG_ER008108 | IG_ER008111 |
| IG_ER008112 | IG_ER008115 |
| IG_ER008116 | IG_ER008119 |
| IG_ER008120 | IG_ER008125 |
| IG_ER008126 | IG_ER008129 |
| IG_ER008130 | IG_ER008133 |
| IG_ER008134 | IG_ER008137 |
| IG_ER008138 | IG_ER008141 |
| IG_ER008142 | IG_ER008554 |
| IG_ER008555 | IG_ER008558 |

| | |
|---|---|
| IG_ER008559 | IG_ER008562 |
| IG_ER008563 | IG_ER008566 |
| IG_ER008567 | IG_ER008570 |
| IG_ER008571 | IG_ER008574 |
| IG_ER008575 | IG_ER008578 |
| IG_ER008579 | IG_ER008582 |
| IG_ER008583 | IG_ER008586 |
| IG_ER008587 | IG_ER008590 |
| IG_ER008591 | IG_ER008594 |
| IG_ER008595 | IG_ER009087 |
| IG_ER009088 | IG_ER009089 |
| IG_ER009090 | IG_ER009092 |
| IG_ER009093 | IG_ER009096 |
| IG_ER009097 | IG_ER009099 |
| IG_ER009100 | IG_ER009102 |
| IG_ER009103 | IG_ER009621 |
| IG_ER009622 | IG_ER010192 |
| IG_ER010193 | IG_ER010433 |
| IG_ER010434 | IG_ER011890 |
| IG_ER011891 | IG_ER012172 |
| IG_ER012173 | IG_ER012485 |
| IG_ER012486 | IG_ER012918 |
| IG_ER012919 | IG_ER013349 |
| IG_ER013350 | IG_ER013351 |
| IG_ER013352 | IG_ER013740 |
| IG_ER013741 | IG_ER014055 |
| IG_ER014056 | IG_ER014104 |

Covington & Burling LLP

| | |
|---|---|
| CB_0007333 | CB_0007333 |
| CB_0007334 | CB_0007338 |
| CB_0019357 | CB_0019371 |
| CB_0019901 | CB_0019904 |
| infoUSA 000042 | infoUSA 000044 |
| infoUSA 000045 | infoUSA 000046 |
| infoUSA 000081 | infoUSA 000083 |
| infoUSA 000088 | infoUSA 000088 |
| infoUSA 000170 | infoUSA 000173 |
| infoUSA 000263 | infoUSA 000265 |

E-6

| | |
|---|---|
| infoUSA 000413 | infoUSA 000414 |
| infoUSA 000624 | infoUSA 000625 |
| infoUSA 000720 | infoUSA 000723 |
| infoUSA 000785 | infoUSA 000787 |
| infoUSA 000894 | infoUSA 000897 |
| infoUSA 001179 | infoUSA 001181 |
| infoUSA 004591 | infoUSA 004604 |
| infoUSA 005657 | infoUSA 005657 |
| infoUSA 007710 | infoUSA 007780 |
| infoUSA 008781 | infoUSA 008792 |
| infoUSA 009539 | infoUSA 009548 |
| infoUSA 009925 | infoUSA 009939 |
| infoUSA 010050 | infoUSA 010060 |
| infoUSA 010187 | infoUSA 010234 |
| infoUSA 010235 | infoUSA 010239 |
| infoUSA 010371 | infoUSA 010378 |
| infoUSA 014835 | infoUSA 014850 |
| INFOUSA_VG_0003839 | INFOUSA_VG_0003840 |
| INFOUSA_VG_0003884 | INFOUSA_VG_0003924 |
| INFOUSA_VG_0003925 | INFOUSA_VG_0003993 |
| IUSA-SLC 0042579 | IUSA-SLC 0042593 |
| IUSA-SLC 0046731 | IUSA-SLC 0046756 |
| IUSA-SLC 0046778 | IUSA-SLC 0046783 |
| IUSA-SLC 0019817 | IUSA-SLC 0019818 |
| IUSA-SLC-13515 | IUSA-SLC-13521 |
| IUSA-SLC-13522 | IUSA-SLC-13522 |
| IUSA-SLC-13523 | IUSA-SLC-13529 |
| IUSA-SLC-13530 | IUSA-SLC-13534 |
| IUSA-SLC-13535 | IUSA-SLC-13646 |
| IUSA-SLC-13647 | IUSA-SLC-13653 |
| IUSA-SLC-13654 | IUSA-SLC-13659 |
| IUSA-SLC-13660 | IUSA-SLC-13665 |
| IUSA-SLC-13666 | IUSA-SLC-13666 |
| IUSA-SLC-13667 | IUSA-SLC-13673 |
| IUSA-SLC-13674 | IUSA-SLC-13675 |
| IUSA-SLC-13676 | IUSA-SLC-13683 |
| IUSA-SLC-13684 | IUSA-SLC-13716 |
| IUSA-SLC-13717 | IUSA-SLC-13717 |
| IUSA-SLC-13718 | IUSA-SLC-13718 |

IUSA-SLC-13719          IUSA-SLC-13725
IUSA-SLC-13726          IUSA-SLC-13727
IUSA-SLC-13728

Additional Covington & Burling LLP production:

Excel spreadsheets and miscellaneous documents and emails

Hogan & Hartson LLP:
IG_ER013601
IG_ER013602
IG_ER013603
IG_ER013604
IG_ER013627
IG_ER013628
IG_ER013629
IG_ER013630
IG_ER013644
IG_ER013645
IG_ER013646
IG_ER013648
IG_ER013730
IG_ER013731
IG_ER013732
IG_ER013733
IG_ER013803
IG_ER013804
IG_ER013805
IG_ER013350 - 2003-2007 Credit Card Expense and Flight Cost Analysis Methodology
IG_ER014258 - 2003-2007 Country Club Expense Analysis Methodology
IG_ER014260 - 2003-2007 Country Club Expense Amended Analysis.XLS
IG_ER015806 - 2003 Flight Cost Amended Analysis.XLS
IG_ER016118 - 2004 Flight Cost Amended Analysis.xlsx
IG_ER016288 - 2005 Flight Cost Amended Analysis.xlsx
IG_ER016314 - 2006 Flight Cost Amended Analysis.XLS
IG_ER016663 - 2007 Flight Cost Amended Analysis.XLS
IG_ER017020 - 2006 - 2008 Yacht Analysis.xlsx
IG_ER010434 - 2003-2007 Credit Card Expense Analysis-1.XLS
IG001259 - Personnel Expenses 2006 2007.xls
IG002124                IG002128

E-8

IG018941
IG018942
IG018943
IG018944
IG018945
IG018946
IG018947
IG018948
IG018949
IG018950
IG018951
IG018952
IG018953
IG018954
IG018955
IG018956
IG018957
IG018958
IG018959
IG018960
IG018961
IG018965
IG021892                 IG021899
JB0015                    JB0039

WilmerHale LLP
VG 0000438                VG 0000446
VG 0000888
VG 0004110                VG 0004114
VG 0012775
VG 0014523                VG 0014526
VG 0014527                VG 0014529
VG 0014538                VG 0014542
VGUPTA_PROD233512  VGUPTA_PROD233515
VGUPTA_PROD233577  VGUPTA_PROD233579
VGUPTA_PROD233686  VGUPTA_PROD233689
VGUPTA_PROD233924  VGUPTA_PROD233926
VGUPTA_PROD014461  VGUPTA_PROD014464
VGUPTA_PROD014465  VGUPTA_PROD014467
VGUPTA_PROD014476  VGUPTA_PROD014480

Locke Lord Bissell & Liddell LLP

| | |
|---|---|
| KPMG 0018871 | KPMG 0018881 |
| KPMG 0040189 | KPMG 0040193 |
| KPMG 0080097 | KPMG 0080100 |
| KPMG 0014402 | KPMG 0014409 |
| KPMG 0080097 | KPMG 0080108 |
| KPMG2-000003 | KPMG2-000022 |

Rothgerber Johnson & Lyons LLP

| | |
|---|---|
| EVER/ASP00129 | EVER/ASP00130 |
| EVER/ASP00950 | EVER/ASP001013 |

Ernst & Young

EY-INFU-WP-08-000002 EY-INFU-WP-08-000003

Other:

| | |
|---|---|
| PA 0000048 | PA 0000050 |
| PA 0000615 | PA 0000617 |
| 00467 | 00471 |