IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) | **CASE NO. 8:10CV102** |
| **Plaintiff,** | ) ) ) | **MEMORANDUM** |
| v. | ) ) ) | **AND ORDER** |
| **RAJNISH K. DAS and STORMY L. DEAN,** | ) ) ) | |
| **Defendants.** | ) | |

This matter is before the Court on the objection raised by the Defendants to the testimony of the Plaintiff's expert witness, Dr. Steven Henning, regarding whether certain reimbursements to the chief executive officer ("CEO") of infoUSA, Inc., now known as infoGroup, Inc. ("Info"), the public company for which the Defendants Rajnish K. Das and Stormy L. Dean acted as chief financial officer at different times, should be properly categorized as "perquisite" compensation.  On January 3, 2012, the Defendants filed a Motion in Limine (Filing No. 156) seeking to limit the testimony of Dr. Henning.  On February 8, 2012, the Court declined to foreclose Dr. Henning's testimony pursuant to an order in limine, and stated that the Defendants could raise their objections at the time of trial.  (Filing No. 195, at 7.)  The trial commenced on February 14, 2012, and the Defendants raised their objections.  Outside the presence of the jury, the Defendants questioned the relevance and reliability of Dr. Henning's testimony based on the methodology he used to determine if certain items were perquisites.

The Defendants asserted that the methodology Dr. Henning used in his analysis is irrelevant and unreliable because it is more conservative than what is required by the guidance set forth by the Securities and Exchange Commission ("SEC"), and therefore, is

inconsistent with the applicable legal standard. The Court has considered the arguments raised by the parties. For the reasons discussed below, the objection will be overruled.

## STANDARD OF REVIEW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In light of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999),[1] the Court must screen proffered expert testimony for relevance and reliability. *Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 896 (8th Cir. 2008). Generally, an expert may express an opinion regarding the issue of whether an item is properly classified as a personal or business expense. *See United States v. Mikutowicz*, 365 F.3d 65, 72 (1st Cir. 2004) (allowing expert testimony regarding whether, for tax purposes, an item was a non-deductible personal expense instead of a deductible business expense).

## DISCUSSION

Dr. Henning testified that the methodology he employed, a "primary purpose" methodology, was appropriate to determine whether an item was a perquisite, and that

---

[1] The Supreme Court held that *Daubert* applies to all expert testimony, not only scientific expert testimony. *Kumho Tire Co.*, 526 U.S. at 141.

other professionals use it for SEC disclosure purposes. (Transcript, at 449:14-20, 449:24-450:3, 451:2-4.) The Defendants do not refute that other professionals use a "primary purpose" methodology for SEC disclosure purposes. However, the Defendants contend that Dr. Henning's use of a "primary purpose" methodology, borrowed from the Internal Revenue Code ("IRC") for determining whether an item is a business or a personal expense,[2] was more conservative or rigorous than the methodology the SEC guidance set forth, and, therefore, would not be helpful to the jury. (Transcript, at 166:7-167:24, 173:23-24.) The SEC argues that the primary purpose methodology is an appropriate test to determine whether an item is a perquisite under the SEC guidance.

Contrary to the Defendants' assertion, a comparison of the two methodologies reveals that a methodology borrowed from the IRC would be less conservative and rigorous, and therefore, should result in fewer items being classified as perquisites, than the SEC methodology. The SEC has provided guidance for how to treat an "item that is integrally and directly related to the performance of the executive's duties but has a personal benefit as well." 71 FR 53158, 53175 (Sept. 8, 2006). This SEC guidance stated:

> Among the factors to be considered in determining whether an item is a perquisite or other personal benefit are the following:
>
> • An item is not a perquisite or personal benefit if it is integrally and directly related to the performance of the executive's duties.
>
> • Otherwise, an item is a perquisite or personal benefit if it confers a direct or indirect benefit that has a personal aspect, without regard to whether it may be provided for some business reason or for the convenience of the company, unless it is generally available on a non-discriminatory basis to all employees.

*Id.* at 53176. The guidance explained that:

---

[2] *See* 26 U.S.C. § 162(a).

3

> [i]f an item is integrally and directly related to the performance of the executive's duties, that is the end of the analysis—the item is not a perquisite or personal benefit and no compensation disclosure is required. . . . Because of the integral and direct connection to job performance, the elements of the second part of the analysis (e.g., whether there is also a personal benefit or whether the item is generally available to other employees) are irrelevant.

*Id.* at 53176-77. However, the guidance also explained that "[t]he concept of a benefit that is 'integrally and directly related' to job performance is a narrow one[ that] . . . draws a critical distinction between an item that a company provides because the executive needs it to do the job . . . and an item provided for some other reason, even where that other reason can involve both company benefit and personal benefit." *Id.* at 53177. Thus, an item is "integrally and directly related to the performance of duties" when it is provided because "the executive needs it to do [his/her] job." *Id.* at 53176.

Under the IRC, an item is a deductible business expense if it is "ordinary and necessary" and "paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a). The "primary purpose test" relates to the determination of whether the taxpayer was engaging in an ongoing trade or business when the expense was incurred. "In order to be engaged in carrying on a trade or business, the taxpayer 'must be involved in the activity with continuity and regularity and . . . the taxpayer's primary purpose for engaging in the activity must be for income or profit.'" *Green v. CIR*, 507 F.3d 857, 870 (5th Cir. 2007) (quoting *CIR v. Groetzinger*, 480 U.S. 23, 35 (1987)); *see also* 26 U.S.C. § 183(c) ("the term 'activity not engaged in for profit' means any activity other than one with respect to which deductions are allowable for the taxable year under section 162

4

or under paragraph (1) or (2) of section 212.").[3]  In other words, the motivation for incurring the expense must be to make a profit.  *See Lopez v. CIR*, 116 Fed. App'x 546, 549-550 (5th Cir. 2004) (citing Treas. Reg. § 1.183-2(b)(1)-(9)).  An expense is ordinary and necessary if it "is normal or useful and helpful or appropriate for the operation of a particular trade or business."  Black's Law Dictionary 618 (8th ed. 2004); *see also CIR v. Tellier*, 383 U.S. 687, 689 (1966) (citations omitted) ("Our decisions have consistently construed the term 'necessary' as imposing only the minimal requirement that the expense be 'appropriate and helpful' for 'the development of the (taxpayer's) business.'"); *Deputy v. du Pont*, 308 U.S. 488, 495 (1940) (stating that an item is "ordinary" if it is "of common or frequent occurrence in the type of business involved.").

The SEC guidance, discussed above, addresses the relationship between the "integrally and directly related" methodology and the IRC methodology.  The relevant portion of the guidance stated:

> the fact that the company has determined that an expense is an "ordinary" or "necessary" business expense for tax or other purposes or that an expense is for the benefit or convenience of the company is not responsive to the inquiry as to whether the expense provides a perquisite or other personal benefit for disclosure purposes. Whether the company should pay for an expense or it is deductible for tax purposes relates principally to questions of state law regarding use of corporate assets and of tax law; our disclosure requirements are triggered by different and broader concepts.

---

[3]The applicable Treasury Regulations provide a list of "nine non-exclusive factors" that courts tend to use when determining "whether a profit motive exists."  *Lopez v. CIR*, 116 Fed. App'x 546, 549-550 (5th Cir. 2004) (citing Treas. Reg. § 1.183-2(b)(1)-(9)).  These factors include (1) the manner in which the party carries on the activity, (2) the expertise of the party or its advisors, (3) the time and effort the party expended in carrying on the activity, (4) the expectation that the assets used in the activity might appreciate in value, (5) the success of the party in carrying on other similar or dissimilar activities, (6) the party's history of income or losses with respect to the activity, (7) the amount of the occasional profits, if any, which are earned, (8) the party's financial status, and (9) the elements or personal pleasure or recreation.  *See* Treas. Reg. § 1.183-2(b)(1)-(9).  "Courts give greater weight to these objective factors than to the [party's] statements regarding his or her intent."  *Id.* at 550 (citing *Westbrook v. CIR*, 68 F.3d 868, 875 (5th Cir.1995)).  The presence of a profit motive is a question of fact.  *Id.*

71 FR 53158, 53177.  Thus, the SEC guidance provides that the narrow "integrally and directly related" methodology should result in a company disclosing more items as perquisites than if the company used a methodology borrowed from the IRC.  This proposition is supported by a comparison of the language of the two standards.

Similar to the IRC's requirement that an expense be incurred in carrying on a trade or business for it to be a business expense, the "integrally and directly related" methodology requires that an item be "related to the performance of the executive's duty."[4]  71 FR 53158, 53175-76.  However, where a methodology borrowed from the IRC would only require an expense be normal or useful and helpful or appropriate, the "integrally and directly related" methodology requires that an item pass the stricter standard of being needed or necessary for it to be deemed not a  perquisite.[5]  Thus, to the extent that the methodology Dr. Henning borrowed from the IRC was different than the "integrally and directly related" methodology, it would have been less conservative and rigorous, and would have resulted in the reporting of fewer perquisite items.

---

[4]*Compare Green*, 507 F.3d at 870 (quoting *Groetzinger*, 480 U.S. at 35) ("In order to be engaged in carrying on a trade or business, the taxpayer 'must be involved in the activity with continuity and regularity and ... the taxpayer's primary purpose for engaging in the activity must be for income or profit.'", *and Lopez*, 116 Fed. App'x at 549-550 (citing Treas. Reg. § 1.183-2(b)(1)-(9)) (analyzing whether a profit motive existed to determine if "'the taxpayer's primary purpose for engaging in the activity [was] for income or profit.'" ), *with* 71 FR 53158, 53176 ("An item is not a perquisite or personal benefit if it is integrally and directly related to the performance of the executive's duties."), *and* Black's Law Dictionary 211, 610 (8th ed. 2004) (defining "executive officer" as "[a] corporate officer at the upper levels of management" and "[a]n employee whose duties include . . . active participation in the control, supervision, and management of the business," and "business" as "[a] commercial enterprise carried on for profit.").

[5]*See* 71 FR 53158, 53177:

> The concept of a benefit that is "integrally and directly related" to job performance is a narrow one. The analysis draws a critical distinction between an item that a company provides because the executive needs it to do the job, making it integrally and directly related to the performance of duties, and an item provided for some other reason, even where that other reason can involve both company benefit and personal benefit.

The Defendants point to *United States v. Wintermute*, 443 F.3d 993 (8th Cir. 2006), in support of their argument that Dr. Henning's testimony must be excluded because his methodology misrepresents the burden of proof imposed upon the SEC and misconstrues the legal question at issue. More specifically, the Defendants contend that Dr. Henning's methodology was more conservative and rigorous than what was actually required of Info. In *Wintermute*, a criminal case, the government charged the defendant with violating 18 U.S.C. § 1001 for making a false statement to the Office of the Comptroller of Currency ("OCC") when seeking the OCC's approval of her application to purchase a bank. *Id.* at 997. Section 1001 required the government to show, among other things, that the defendant made a statement that was either "material, or capable of influencing the OCC's decision to grant [the defendant's] application to acquire [the bank]." *Id.* at 1000. The defendant sought to admit an expert's testimony on the issue of materiality that would have presented to the jury the opinion that the defendant's "false statements . . . 'indicate[d] that the alleged misrepresentations were not material and would not have affected the decision-making process with respect to the [defendant's] application." *Id.* at 1001. The Eighth Circuit found that the "proposed testimony present[ed] an erroneous understanding of section 1001's materiality element . . . [because] to prove materiality, the government needed to show only the false statements were *capable* of influencing the OCC's decision. The government was not required to prove the false statements actually *succeeded* in influencing the OCC." *Id.* (emphasis in original). As a result, the Eighth Circuit concluded that the district court did not abuse its discretion when it excluded the expert's testimony as irrelevant because it "misrepresented the government's burden of proving materiality"

7

and "would have served to confuse rather than assist the jury in the jury's attempt to understand the evidence on [the] issue [or materiality]." *Id.*

Although the IRC and the "integrally and directly related" methodologies may not be identical, unlike in *Wintermute*, Dr. Henning's testimony is relevant to this case and will be helpful to the jury. In *Wintermute*, the defendant sought to admit expert testimony that had the potential to mislead the jury and make it more difficult for the government to prove its case. Here, the SEC is seeking to admit testimony based on a methodology that, to the extent it is different from the "integrally and directly related" methodology, would, as explained above, tend to make proving its own case more difficult because it is less conservative and rigorous than the "integrally and directly related" methodology; it would lead to a finding that the Defendants failed to report a lesser number of perquisite items than if the "integral and directly related" methodology were used. Although such a methodology might not reveal the exact amount of perquisites received by Info's CEO, it would not prejudice the Defendants, and it would be helpful to the jury because it is relevant and reliable to show the general scope of the perquisites received by Info's CEO during the relevant time period.

Accordingly,

IT IS ORDERED that the Defendants' objection to Dr. Henning's testimony is overruled.

DATED this 22nd day of February, 2012.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge